UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LAFJORD USA,<br><br>    Plaintiff,<br><br>    v.<br><br>NUTRECO HOLDING NV and MARINE HARVEST ROGALAND AS,<br><br>    Defendants. | CASE NO. C03-3897RSM<br><br>ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter is before the Court on defendants' motion for summary judgment on all claims. The Court heard oral argument on May 4, 2005, and has fully considered the memoranda and exhibits submitted by the parties. For the reasons set forth below, defendants' motion is GRANTED IN PART and DENIED IN PART.

FACTUAL BACKGROUND

This dispute concerns the supply of smoked salmon to Costco for sale under the Kirkland Signature private label. Plaintiff Lafjord USA ("Lafjord") is owned by Ian Bouchard. Mr. Bouchard had worked previously with Costco to supply fresh salmon filets, and in 1998 he secured a contract to supply smoked salmon for the Kirkland Signature private label. Mr. Bouchard subcontracted with the Lafjord Group, a Norwegian cooperative with a small smokery in Flekkefjord, Norway. The Lafjord Group smokery was subsequently purchased by Norsk Hydro and then by defendant Marine Harvest ("MH"), which is wholly owned by defendant Nutreco. These transactions were completed by the fall of 2002.

Lafjord USA and the smokery worked together for a number of years under a written working

ORDER ON MOTION FOR SUMMARY JUDGMENT - 1

agreement dated August 13, 1998. At that time the Costco product specification was for a net weight of 1.35 pounds per package. By 2000, the package weight was 1.5 pounds, for which the metric equivalent is 680 grams. During the parties' course of dealing it became very clear that Costco's requirement was for 680 grams net weight of fish in the package. This was a requirement that was stated by Costco to Lafjord in letters and e-mails, and then repeated by Lafjord to the smokery. However, upon testing, many packages were still found to be underweight, due to moisture loss and oil absorption by the board on which the salmon was placed. This became an ongoing problem. For example, test results in March 2000, showed all packages underweight, with some as low as 1.45 pounds. Mr. Bouchard sent a number of messages to Norway in 2000 and 2001, emphasizing the gravity of the problem, which could cost them both the contract. He demanded that the smokery pack extra fish in each package to ensure no underweight packages, and he promised Costco that this would be done. On September 20, 2001, Mr. Bouchard and MH employees signed meeting notes agreeing that "Lafjord salmon" (meaning the smokery, not Lafjord USA) would provide evidence of compliance with the "no underweight" requirement, and would continue to "overpack" to 700 grams until a 6-month review showed it was not necessary to pack that much. At that time the parties could mutually agree to pack less. Mr. Bouchard would then appeal to Costco for a lighter packing specification.

On February 21, 2002, Henning Livastol of MH wrote to Mr. Bouchard, asking that the overpack requirement be reduced to 690 g. Mr. Bouchard responded only that he would check with Costco about that. In September 2002, Lafjord secured a new contract with Costco, which designated Marine Harvest as the sole supplier for the contract. The product specifications called for "1.5 lb. packaged weight (no underweight_)" [sic].

Defendants admitted in interrogatories that in February 2003, MH employees met in Norway, without Mr. Bouchard, and discussed reducing the overpack in a two-stage process, down to 680-690 grams. The first weight reduction was made in February, and the second reduction, down to 680 grams, was implemented in April 2003. Mr. Bouchard was not informed of this and did not learn until August 2003, that underweight packages were showing up at Costco again. He sent an inquiry by e-mail about this, and received an answer back from Andreas Kvame, who assured him that no packages had been

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 2

packed underweight, and that all weight documentation had been done.

On September 25, 2003, Mr. Bouchard received an e-mail from Costco, reminding him of the "zero tolerance" policy on short weights, and warning that Costco would start looking for an additional source for the smoked salmon as the holidays approached. Lafjord then arranged with Costco to re-label the underweight packages with a lower weight or as random weights, and reduce the price accordingly.

In mid-October, there was an announcement in a trade publication, Intrafish, that Costco had terminated the contract with Lafjord because of the short weights. Both parties here claim that this public announcement came as a surprise. It appears that Costco continued to accept shipments through Lafjord for some weeks thereafter. However, Marine Harvest stopped supplying smoked salmon to Lafjord altogether in late November or December 2003. At the same time, Marine Harvest executives were negotiating directly with Costco to supply the salmon, beginning with a letter dated October 17, 2003, and a November 7, 2003 proposal by Marine Harvest. Although some of the discussions included the option of continuing to use Lafjord, in the end that did not occur. Nutreco executive Hans den Bieman, in a letter to Costco dated October 17, 2003, blamed the "regrettable situation" (the weight issue) on misunderstandings caused by communication through the so-called middleman, meaning Lafjord. Marine Harvest's November 26, 2003 proposal to Costco included in the specifications a weight of "1.5 Lbs./ 680 Gr. Plus 3% overage."

## DISCUSSION

On December 12, 2003, Lafjord filed this lawsuit, alleging claims of breach of contract, tortious interference with business relations, breach of the duty of good faith and fair dealing, unjust enrichment, fraud and misrepresentation, breach of agency duties, Consumer Protection Act violations, Washington Securities Act violations, and unfair competition/misappropriation of trade secrets. Plaintiff claims damages in the range of $10 to $16 million. Defendants have moved for summary judgment on all claims, as well as on their counterclaim for some $6 million they claimed they are owed for unpaid invoices. Plaintiff has opposed the motion.

As an initial matter, defendants moved in their reply to strike several documents submitted by plaintiff. These fall into several categories: (1) documents related to settlement negotiations,  (2)

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 3

hearsay statements of Ian Bouchard and Haakon Staalesen in their declarations; and (3) the Declaration of Kim Pullen, because this witness was never identified as either a fact or an expert witness. Plaintiff has not timely opposed the motion to strike,[1] and it is accordingly GRANTED. As to the merits of defendants' motion, the Court now rules on each separate claim as follows.

I. <u>Breach of Contract</u>.

Plaintiff has claimed that defendants breached three separate contracts: the 1998 working agreement, the 2001 agreement to pack 700 grams per package, and the 2002 Costco-Lafjord contract. In moving for summary judgment on this claim, defendants rely on state and federal weights and measures regulations, which govern the "dry tare" versus the "wet tare" method of determining weights. According to defendants, Lafjord's attempt to force a "wet tare" weighing method on Marine Harvest (to account for moisture loss and oil purge) violates Washington law. However, this line of argument is irrelevant to the breach of contract claim. While the law may set the minimum standards, the parties may contract otherwise as they see fit, and did so here. The September 9, 2002 contract between Lafjord USA and Costco clearly specified 680 grams, with no underweight packages. By this time, the parties had been dealing with one another for over three years, and had a clear understanding of Costco's demand that this meant 680 grams net weight of fish per package. It is this contract term and the parties' understanding of it which controls, not the state or federal minimum regulations.

Next, defendants argue as to each contract that it was either not enforceable, not binding upon them, or not, as a matter of law, breached. The contracts will be addressed separately.

(1) <u>The 1998 working agreement</u>. In this agreement, Lafjord USA and the Lafjord Group agreed to "comply fully with the terms and conditions of the Kirkland Signature Programme." The duration of the agreement was to be "not less than that of Lafjord's agreement with Costco Wholesale." Although the specifications in this contract called for a 1.35 pound package with a deviation up to 2%,

---

[1] Plaintiff filed a post-hearing letter to the Court, stating that no opposition to the Motion to Strike was filed because, under Local Rule CR 7(g)(4), such response should only be filed upon request of the Court. Plaintiff has mis-read Local Rule CR 7(g). When a request to strike material appears in a reply brief, the opposing party may file a surreply. Leave of Court is not required for filing a surrreply, but the filing party must notify the Court and the opposing party by telephone or facsimile that it will be filed. It is the response to the surreply which cannot be filed unless requested by the Court. Local Rule CR 7(g).

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 4

that specification could be changed upon written agreement of the parties.

The Court finds, as a matter of law, that this agreement was amended as to the weight specification, but was not superceded by later agreements. The question of breach of this contract is therefore one for the jury.

(2) <u>The 2001 meeting notes</u>. On September 20, 2001, Mr. Bouchard and MH employees signed meeting notes agreeing that "Lafjord salmon" (meaning the smokery, not Lafjord USA) would provide evidence of compliance with Costco's "no underweight" requirement, and would continue to "overpack" 700 grams of salmon until a 6-month review showed it was not necessary to pack that much. The parties could then mutually agree to reduce the packing requirement, providing Costco approved. Defendants contend that this document represents an unenforceable "agreement to agree," not a contract. The Court finds otherwise. While other provisions in the meeting notes represent ongoing discussions, this specific provision documents an actual agreement by Marine Harvest to pack 700 grams of salmon until the parties mutually agreed otherwise. The question of whether defendants later breached this agreement is one for the jury.

(3) <u>The 2002 Lafjord-Costco Private Label Agreement ("Agreement")</u>.  Marine Harvest was designated in this contract as the sole subcontractor. Magnus Skretting, on behalf of Marine Harvest, signed the contract as subcontractor.  The subcontractor designation stated in ¶ 13 that "Vendor [Lafjord] shall cause each Subcontractor to comply with and to carry out all obligations of Vendor under the Private label Documents with respect to any activity carried out by the Subcontractor."  In ¶ 14, Marine Harvest undertook to comply with all of Lafjord's obligations in the Private Label Standard Terms and the Costco Wholesale Vendor Code of Conduct.

Lafjord and Marine Harvest both assert that MH, by signing as subcontractor, became a party to this contract. Defendant argues, however, that it cannot have breached this agreement as a matter of law, because the contract clearly specifies 1.5 pounds "packaged weight"---a technical term which must be given its technical meaning. Further, according to defendants, under ¶ 5 of the Agreement no other written or oral agreements may apply to alter or interpret that language.

Paragraph 5 of the Private Label Agreement states, in relevant part,

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 5

> The Private Label Documents supersede all terms and conditions in Vendor's invoices and other forms, and all prior oral or written communications between Vendor and Costco Wholesale, for the matters covered in the Private Label Documents. No party is entering into these Private Label Documents in reliance on any oral or written promises, representations or understandings other than those in the Private Label Documents.

Private Label Agreement, dated September 16, 2002. The first sentence of this paragraph operates only between Costco and Lafjord, the Vendor.[2] As to the second sentence, as noted above, both parties argued at the motion hearing that Marine Harvest was a "party" to the Agreement. For the purposes of this analysis, the Court assumes, without deciding, this to be so. Nevertheless, this language does not bar application of separate agreements between Lafjord and Marine Harvest regarding the carrying out of their mutual obligations under the Agreement. Indeed, under ¶ 13, as set forth above, Lafjord was bound to "cause" Marine Harvest to so comply.

The question, then, becomes the legal meaning of the contract specification for "1.5 lb. packaged weight (no underweight)." Extrinsic evidence is admissible in determining the parties' intent in using the term "packaged weight." <u>Berg v. Hudesman</u>, 115 Wash. 2d 657, 667 (1990) (adopting Restatement (Second) of Contracts, §§ 212, 214(c)). Where the interpretation of an integrated agreement does not depend upon the credibility of extrinsic evidence, or upon a choice among reasonable inferences to be drawn from the extrinsic evidence, the question is one for the Court. <u>Id</u>.

It is defendants' position that "packaged weight" is a technical term which must be given its technical meaning, citing <u>Blue Mountain Memorial Gardens v. State of Washington</u>, 971 P. 2d 75, 77 (Wn. App. 1999) (*citing* Restatement (Second) of Contracts, § 202(3)(b)). However, that section only applies where "a different intention" is not manifested by the parties. *See* § 202(3). Here, the matrix of circumstances surrounding the making of that Agreement clearly manifests a different intention. In particular, Costco's repeated insistence on 680grams net weight of salmon; the complete absence of any reference in the contract or negotiations to terms of art such as "wet tare" or "dry tare," or to any industry standards or regulations on package weights; and Lafjord's 2001 written demand of Marine Harvest that it pack a minimum of 700grams to comply with Costco's requirements, all demonstrate the

---

[2]For this reason, the Court rejects defendants' argument that the 2002 Agreement explicitly superceded the 1998 working agreement between Lafjord USA and the Lafjord Group.

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 6

parties' understanding that "packaged weight" meant net weight of fish. Significantly, Marine Harvest adhered to this standard in its own November 6, 2003 contract proposal to Costco, by specifying a 3% overage—which would be 20grams extra, or a total of 700grams.

In light of the clear guidance provided by the parties' course of dealing in this area, there is no other reasonable inference to be drawn. Berg, 115 Wn. 2d at 668 (*quoting* Restatement (Second) of Contracts § 212 (2)). The Court finds, as a matter of law, that the 1.5 pound "packaged weight" term in the 2002 Costco contract specified 680grams net weight of fish. The question of defendant's breach of this contract term is one for the jury.

Accordingly, defendant's motion for summary judgment is DENIED as to each of the three contracts asserted by plaintiff.

II. <u>Tortious Interference with Business Relations</u>.

Defendants assert they are entitled to summary judgment on this claim for three reasons. First, they argue that a party cannot interfere with its own contract. Plaintiff argues, in response, that MH was bound by the Costco contract and cannot interfere with the MH-Lafjord contract, but as between Costco and Lafjord, MH is a third party whose improper conduct may subject it to a claim of tortious interference. The Court agrees. "It appears to be the general view that, in those instances in which the conduct of the breaching party indicates a motive to destroy some interest of the adverse party, a tort action may lie and items of damage not available in contract actions will be allowed." <u>Cherberg v. Peoples National Bank</u>, 88 Wash. 2d 595, 603 (1977). Thus the question as to whether the conduct of MH in reducing the overpack in 2003 demonstrates an improper motive as articulated in <u>Cherberg</u> would be one for the jury.

Defendants' remaining two bases for summary judgment on the tortious interference claim are that (a) MH was simply protecting its own economic interest by packing only 680g and refusing to overpack, and (b) Lafjord's business expectations of a continuing relationship with Costco are just "wishful thinking," because the contract was not an exclusive one. These arguments also pose questions of fact for the jury. Accordingly, defendants' motion for summary judgment on the tortious interference claim is DENIED.

ORDER ON MOTION FOR SUMMARY JUDGMENT - 7

III. <u>Breach of Duties of Good Faith and Fair Dealing</u>.

Defendants assert that this claim fails because MH was simply "standing on its rights" to perform under the 2002 contract–in other words, to pack only 680grams of fish. "Thus, if the Court determines that MH was only required to pack 680 grams, as a matter of law MH *cannot* have breached a duty of good faith by standing on its right to pack only what it was required to pack." Defendants' Reply, p. 7. Since the Court has **not** determined as a matter of law that MH was only required to pack 680 grams, summary judgment must be DENIED on this claim as well.

IV. <u>Unjust Enrichment, Accounting, and Constructive Trust.</u>

Defendants contend that these claims should be dismissed because they duplicate the breach of contract claim.  The general rule is that a party to a valid express contract is bound by the provisions of that contract, and cannot bring an action on an implied contract relating to the same subject matter. <u>Associated General contractors of America v. State of Washington</u>, 518 P. 2d 212, 214 (Wash. App. 1974).  "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter. . . ." <u>Sevel Argentina, S.A. v. General Motors Corporation</u>, 46 F. Supp. 2d 261, 270-71 (S.D.N.Y. 1999). Plaintiff agrees that this states the general rule, but argues that it does not apply where there is evidence of tortious conduct or an agency relationship.  Plaintiff also contends that since the parties had no contract on the "hot-smoked" salmon, claims relating to that program would not fall under the rule. Neither of plaintiff's arguments is persuasive.  As to the tortious conduct argument, plaintiff has not cited to any authority to support the argument.  As to the "hot-smoked" salmon, all of plaintiff's allegations and claims are purely speculative, since this program never materialized.   Accordingly, defendants' motion for summary judgment on this claim is GRANTED.

V. <u>Fraud and Misrepresentation</u>.

Defendants ague that plaintiff has not pled fraud with sufficient particularity to meet the standards of Fed.R.Civ. Proc. 9(b) and Washington law.  The first and second amended complaints both  allege that from January to October 2003, MH falsely represented that it was adhering to the 700gram packing requirement, knowing that the representations were false, that Lafjord relied on them, and that he

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 8

suffered damage as a consequence. Second Amended Complaint, ¶¶ 4.10 and 4.11. Defendants answered these allegations without raising the Rule 9(b) objections asserted here. They now cite to a single unreported decision of a New York District Court to support their assertion that fraud claims may nevertheless be dismissed under Rule 9(b) on a motion for summary judgment. However, that court first reached the merits of the fraud claim, finding it an improper attempt to convert a breach of contract claim into one for fraud. Phlo Corporation v. Stevens, 2001 WL 630491at *6 (S.D.N.Y. 2001).

The Court finds that, as to specific statements by MH employees to Mr. Bouchard regarding MH's compliance with the 700 gram packing requirement in 2003, plaintiff's allegations are sufficient to meet the "who, what, when, where, and how" requirement and survive defendants' untimely Rule 9(b) motion. Cooper v. Pickett, 137 F. 3d 616, 627 (9th Cir. 1997). As to those statements, defendants' motion for summary judgment on the fraud claim is DENIED. However, as to any alleged misrepresentations regarding other matters, and particularly those regarding the "hot-smoked" salmon product, such allegations were not properly pled, and therefore are not part of this action.

VI. Breach of Agency Duties.

Under the circumstances presented here, the categories of agent and subcontractor are mutually exclusive. MH had no power to act as Lafjord USA's agent or to "alter the legal relations between [the] principal and third persons." Lexchner v. Dept. of Labor and Industry, 185 P.2d 113, 118 (Wash. 1947). Accordingly, defendants' motion for summary judgment on the agency claim is GRANTED.

VII. Consumer Protection Act.

The Court finds no basis here for a Consumer Protection Act (CPA) claim, because Lafjord cannot meet the "public interest" criteria for such a claim. Under the Hangman Ridge test, when the dispute involves a private contract rather than a consumer transaction, four factors must be proven in order to show that the private dispute affects the public interest: (1) the alleged acts were committed in the course of the defendant's business; (2) the defendant advertised to the consumer public in general; (3) the defendant actively solicited the plaintiff, indicating its potential to similarly solicit others; and (4) plaintiff and defendant occupied unequal bargaining positions. Hangman Ridge Training Stables, Inc., v. Safeco Title Insurance Co., 719 P. 2d 531, 537-38 (Wash. 1986). Only the first of these factors has

ORDER ON MOTION FOR SUMMARY JUDGMENT - 9

been shown here. While Marine Harvest might advertise in trade publications, there is no evidence that it advertises this particular product to the general public, nor that any consumer knows who actually produces the Kirkland Signature salmon. As to solicitation, it was plaintiff who selected defendant for this business. Although Marine Harvest is a much larger company, the two parties have relatively equal bargaining positions. Indeed, Marine Harvest is but one of many smoked salmon facilities plaintiff could have chosen for his business.

As there is no basis for a claim under the Washington Consumer Protection Act, defendants' motion for summary judgment on this claim is GRANTED.

VIII. Washington Securities Law Violations.

Plaintiff bases this claim upon the preliminary and unsuccessful negotiations over MH's interest in purchasing Lafjord USA. RCW 21.20.010 makes it unlawful for any person to defraud or make false statements in connection with the offer, purchase, or sale of any security. It is plaintiff's theory that when MH asked Lafjord to "name its price," that constituted an "offer." Even if the proffered evidence of this "offer," which occurred during settlement negotiations immediately prior to the filing of this lawsuit, could be considered by the Court, it would not constitute an "offer" within the meaning of the securities act. Defendants' motion for summary judgment on this claim is GRANTED.

IX. Trade Secrets, Unfair Competition, and Breach of Confidentiality.

In order to establish a claim of misappropriation of trade secrets, the plaintiff must first demonstrate that a legally protectable trade secret exists. Boeing Company v. Sierracin Corporation, 108 Wn. 2d 38 (1987). Defendants assert that this claim should be dismissed because Lafjord's smoked salmon recipe and marketing program were not protectable trade secrets. A trade secret is, by definition, information, including a formula, compilation, program, method, technique or process, that

> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

RCW 19.108.010(4). According to plaintiff, his trade secret is not simply the smoked salmon recipe, but

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 10

the whole marketing program, including product specifications, packaging, quality controls, and "all of the elements that made the Lafjord program a success." Plaintiff's response, p. 43.  Defendants contend that the recipe itself is not protectable because it is readily discernable from the ingredients listed on the package, and the remainder of the asserted elements are too vague to constitute a protectable trade secret.  They cite to Mateson Chemical Corporation v. Vernon, 2000 WL 680020 at * 8 n. 12 as holding that "ingredients and formulation cannot constitute trade secrets [where] they have been publicly disclosed on the product label." Defendants' Reply at 20-21.  Defendants have omitted some critical language from this quote.  The footnote—which is not the court's holding—actually states that

> [t]he platform ingredients and formulation cannot constitute trade secrets since they have been publicly disclosed on the product label and in several patent applications.  "The very act of publishing a trade secret in a patent destroys the secretive nature of that which is disclosed therein."

Id. (citations omitted).  Here, there has been no disclosure of the recipe in a patent application.  Nor does a simple listing of the product ingredients—salmon, sugar, salt, and wood smoke—disclose the actual proportions or method of combining them.   Under these circumstances, the determination whether the specific information asserted by plaintiff is a trade secret is a factual question for the jury. Nowogroski Insurance, Inc., v. Ruckr, 137 Wn. 2d 427, 436 (1999).

Defendants also argue that in order to sustain a claim for misappropriation of a trade secret, Lafjord must show that Marine Harvest obtained the information through "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." Reply, p. 21, *quoting* RCW 19.108.010(1).  This is, however, but one of several ways to prove misappropriation.  An alternative definition of misappropriation is "[d]isclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." RCW 19.108.010(2)(b)(ii)(B).  The application of this section to the facts here presents another question for the jury.

At oral argument, defendants asserted for the first time that plaintiff's trade secret claim is

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 11

foreclosed by the 2002 Private Label Agreement, which superceded "all prior oral or written communications" between Lafjord and Costco. 2002 Private Label Agreement, ¶ 5. Paragraph 11.6 of the associated Costco Wholesale Private Label Standard Terms states that the Vendor shall not incorporate into the product any intellectual property right for which Vendor claims it is the owner without first giving Costco written notice of the nature and scope of those rights. Costco Standard Terms, ¶ 11.6. Defendants contend that plaintiff waived any claim to trade secrets by failing to properly give notice to Costco.

Plaintiff responded to this argument in a post-hearing letter. Because of the manner in which the issue was raised, the Court will consider this response, as well as defendants' reply to it. Plaintiff has pointed to evidence in the file demonstrating that the standard terms in the 1998 Private Label Agreement between Lafjord and Costco were altered by the parties to limit Costco's intellectual property rights to the packaging, not the product itself. Defendants contend that this limitation was superceded by the 2002 Agreement, under ¶ 5, above. However, the 1998 alterations to the standard terms, which were signed and accepted by Costco, arguably constitute prior notice to Costco of the nature and scope of plaintiff's reserved intellectual property rights. This remains a question for the jury.

Accordingly, defendants' motion for summary judgment as to the claim of misappropriation of trade secrets, as well as the related claim of unfair competition, is DENIED. As to plaintiff's claim of breach of a confidential relationship, defendants' motion is GRANTED, as plaintiff has failed to assert facts to support such a claim.

X. <u>Counterclaim</u>.

Defendants have counterclaimed for the amount still owed them by Lafjord on invoices for the final few shipments of salmon. As to Lafjord's liability on this counterclaim, defendants' motion for partial` summary judgment is GRANTED. Although the actual amount is in dispute, the Court notes that plaintiff's own expert arrived at the sum of $4,104,856.31 as the amount owed by Lafjord to Marine Harvest "after consideration of the 2003 damage claim offsets." December 16, 2004, Expert Rebuttal Report of Gregory N. LaCombe. Therefore, without prejudice to later re-calculation based on rebates or other offsets, the Court directs that this sum be segregated by Lafjord and placed in a separate, identified

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 12

account pending the resolution of the claims remaining in this lawsuit. Lafjord shall comply with this requirement by May 20, 2005. As such compliance shall affect the Court's ruling on defendants' pending motion to add additional parties and claims (Dkt. # 103), that motion shall be RE-NOTED on the Court's calendar for May 20, 2005.

Under the Court's March 3, 2005 scheduling Order, the pretrial conference in this matter is set for June 3, 2005 at 11:00 in chambers. Pursuant to the parties' agreement at oral argument that appointment of a settlement judge would be helpful, this case shall be referred to a settlement judge who will be available to conduct a settlement conference prior to that date.

DATED this __10__ day of __May__, 2005.

_[signature]_
RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTION FOR SUMMARY JUDGMENT - 13